## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

M.B., a minor, by her parents and next friends Coby and Dana Bullard,

    Plaintiff(s),

v.

STEAMBOAT MOUNTAIN SCHOOL

    Defendant(s).

## COMPLAINT WITH JURY DEMAND

Plaintiff, M.B. ("Plaintiff" or "M.B."), a minor, by her parents and next friends Coby and Dana Bullard ("Mr. Bullard" and "Ms. Bullard", collectively, "the Bullards"), hereby respectfully files this action against Defendant Steamboat Mountain School ("SMS" or "Defendant"), through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows.  This action seeks injunctive relief and appropriate damages and costs.

### I.   JURISDICTION AND VENUE

1. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Federal question jurisdiction arises under the Constitution and laws of the United States of America,

2. Plaintiff M.B. is a resident of Tarrant County, Texas.

3. Defendant Steamboat Mountain School has as its principal place of business Routt County, Colorado.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the wrongful acts alleged by the plaintiff occurred in whole or in part in Colorado.

## II. BACKGROUND FACTS

5. Plaintiff is a minor student at Defendant Steamboat Mountain School.

6. Plaintiff attends SMS's boarding program, allowing Plaintiff to live at SMS during the school year.

7. Plaintiff is a high-level competitive alpine skier.

8. Plaintiff has been racing since she was six years old.

9. The Bullards live in Texas, and they cannot relocate because they are responsible for taking care of elderly family members. The Bullards' jobs prevent them from relocating.

10. The SMS boarding program allows Plaintiff to attend one of the best ski programs in the nation.

11. Plaintiff is also a disabled individual as defined with the American with Disabilities Act ("ADA"). The ADA definition provides that an individual is disabled for purposes of the Act when a person has an impairment that "substantially limits a major life activity." 42 U.S.C. 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at (2).

12. Plaintiff's disabilities include asthma which substantially impairs her breathing.

13. Plaintiff has been diagnosed with ADHD which substantially impairs her ability to concentrate.

14. Plaintiff suffers from depression which substantially impairs major life activities, such as her ability to regulate her emotions and thoughts.

15. Plaintiff suffers from panic attacks which also substantially impair major life activities.

16. As a result of Plaintiff's disabilities, Plaintiff takes several prescription medications, including Ritalin, Lexapro, Hydroxyzine, Trazadone, and Abilify.

17. With reasonable accommodations such as access to her medication and access to her medical and mental health treatment providers, Plaintiff's disabilities are manageable, and she meets all the requirements and qualifications of SMS.

18. To be provided equal access to SMS's programs, including its boarding program, Plaintiff needs the following reasonable accommodations: proper access to her medications, and proper access to her physician and mental health treatment providers in Steamboat Springs, Colorado.

19. These reasonable accommodations can be provided to Plaintiff without requiring SMS to fundamentally alter its programs.

20. With these reasonable accommodations, Plaintiff's disabilities are managed and she does not pose a direct threat to herself or others.

21. SMS had actual knowledge of Plaintiff's disabilities and need for reasonable accommodations.

22. When the Bullards enrolled Plaintiff at SMS in the summer of 2022, they filled out multiple enrollment forms, including an intake form in which they disclosed Plaintiff's depression, anxiety, and asthma (Plaintiff had not yet been diagnosed with ADHD), as well as the medications Plaintiff was taking.

23. The Bullards also disclosed to SMS a previous suicide attempt.

24. Additionally, the Bullards had in-person discussions with SMS Nurse Audrey Warden ("Ms. Warden") in August 2022 on orientation weekend. The Bullards discussed Plaintiff's conditions, medications, and needs, including Plaintiff's need to access her medication and access her medical and mental health treatment providers.

25. SMS was fully aware at the beginning of the 2022-2023 school year of Plaintiff's disabilities and need for reasonable accommodations.

26. Throughout the 2022-2023 school year, the Bullards and Plaintiff remained in frequent contact with SMS regarding Plaintiff's disabilities and her need for accommodations.

27. For example, by no later than February 2023, SMS was informed of Plaintiff's recent ADHD diagnosis and her medications.

28. Additionally, by February 13, 2023, Plaintiff was suffering from panic attacks.

29. Meanwhile, while Plaintiff was attending the boarding program at SMS, the Bullards, Plaintiff, and Plaintiff's medical providers kept Ms. Warden and SMS updated on all changes to Plaintiff's medications and doses. For example, on March 1, 2023, Plaintiff's medical team determined that Plaintiff had a refill of Trazadone and Abilify ready to treat her mental health conditions, and that there would be a switch from Sertraline to Lexapro.

30. When Plaintiff was properly given her medications and provided access to her treatment providers, her disabilities were managed, and Plaintiff was able to access SMS's programs on an equal basis with her non-disabled peers.

31. While a student in SMS's boarding program during the 2022-2023 school year, SMS failed to adequately ensure Plaintiff access to her reasonable accommodations.

32. Ms. Warden failed to adequately provide Plaintiff access to her medication on multiple occasions. For example, following Christmas break Plaintiff was prescribed cough medicine for a cough. Despite the medicine being prescribed by Plaintiff's doctor, Ms. Warden stopped allowing Plaintiff to take it. Ms. Warden told Plaintiff that she was discontinuing the cough medicine because it had a small amount of codeine in it.

33. Furthermore, on or around February 13, 2023, Ms. Warden failed to provide Plaintiff with ADHD medication following a competition trip. The Bullards had already started Plaintiff on the new medication prior to the competition. Ms. Warden stopped administering the medication to Plaintiff, and she failed to provide us the medication to allow us to administer it while Plaintiff was on a school break following the competition trip. The school break was an ideal time for Plaintiff to begin the new medication because we were staying in Steamboat Springs and we could observe Plaintiff for any reactions and side effects. Despite this, Ms. Warden declined to provide Plaintiff her medication during this school break. The Bullards were forced to contact SMS Head of School Ms. Samantha Coyne Donnel ("Ms. Donnel") regarding Ms. Warden's unilateral refusal to provide Plaintiff her medication.

34. Additionally, in March 2023, SMS failed to ensure that Plaintiff was taking her medication and failed to notify the Bullards that Plaintiff was failing to take her medication until Plaintiff failed to do so for a full seven days. This failure was not only a failure to adequately provide Plaintiff her reasonable accommodations, it was a direct violation of SMS policy regarding medication which requires notification to a student's parents after two missed doses.

35. Additionally, on or about March 9, 2023, Ms. Warden failed to properly ensure Plaintiff access to her mental health treatment provider.  Plaintiff had a standing therapy appointment at 8:00 a.m.  On or about March 9, 2023, Plaintiff was scheduled to leave for a competition at 3:00 p.m.  Despite the lack of conflict between Plaintiff's therapy appointment and her scheduled departure, Ms. Warden unilaterally cancelled Plaintiff's therapy appointment.  Plaintiff was ready, willing, and able to attend her therapy appointment, and she was not told it was cancelled until she was ready to leave for the appointment and asked who was taking her.

36. It was around this time that Plaintiff began engaging in self-harm.  SMS learned by March 23, 2023, that Plaintiff had been engaging in self-cutting.

37. Plaintiff reported no suicidal thoughts or ideations, and SMS Academic Dean Ms. Kaiti Kishehella ("Ms. Kishehella") stated that she "felt that Plaintiff was not in any danger to themselves."

38. Plaintiff's treatment provider in Steamboat Springs was Dr. Nicole McGuffin ("Dr. McGuffin").  The Bullards worked with Dr. McGuffin and SMS to allow SMS to speak with Dr. McGuffin about Plaintiff.  The Bullards cooperated fully with every request from SMS regarding Dr. McGuffin.

39. In April and May 2023, Plaintiff's treatment for her disabilities continued, but at no point did Plaintiff pose any danger to herself or others.

40. In fact, on May 25, 2023, Plaintiff reported having "dark thoughts," but Ms. Warden conducted a suicide screening that did not raise any red flags.

41. While a student at SMS, Plaintiff performed well receiving Bs and B-s.  Plaintiff finished the year with a 2.76 GPA.

42. When Plaintiff received her reasonable accommodations, Plaintiff was fully qualified to meet all SMS's requirements and qualifications for the Boarding program.

43. At no point during the 2022-2023 school year did Plaintiff have any serious disciplinary issues that would rise to the level of expulsion from SMS's boarding program under SMS policy.

44. At no point during the 2022-2023 school year did Plaintiff have any behavioral issues that would rise to the level of expulsion from SMS's boarding program under SMS policy.

45. When Plaintiff receives the reasonable accommodations she needs – proper access to and administration of her medications and proper access to her treatment providers – her disabilities are completely manageable, and she was able to meet all qualifications, expectations, and requirements of SMS's boarding program.

46. On or about the end of January 2023, SMS informed the Bullards and Plaintiff that Plaintiff was admitted to the SMS boarding program for the 2023-2024 school year.

47. On or about March 1, 2023, the Bullards and Plaintiff entered into a contractual agreement for Plaintiff to attend SMS's boarding program for the 2023-2024 school year.  The Bullards and Plaintiff paid a $5,000 deposit on or about March 1, 2023.  On or about May 8, the Bullards and Plaintiff paid another $41,870 towards tuition for SMS's boarding program for the 2023-2024 school year.

48. On or about June 1, 2023, SMS informed the Bullards and Plaintiff that she could not attend SMS, and would not be allowed to participate in SMS's boarding program for the 2023-2024 school year.

49. Ms. Donnel specifically referenced Plaintiff's disabilities and her need for accommodations in denying Plaintiff access to SMS and SMS's boarding program.

50. Following the June 1, 2023, decision, SMS has offered to allow Plaintiff to attend SMS, but not the boarding program.  SMS is aware that this is no different that denying Plaintiff access to SMS because the Bullards and Plaintiff live in Texas and cannot move to Colorado.

51. When SMS made its decision to deny Plaintiff access to SMS and SMS's boarding program for the 2023-2024 school year, the application period for Plaintiff to apply to attend any of the other few boarding schools affiliated with ski programs had closed.  SMS was aware that the timing of its decision prevents Plaintiff from applying to and being accepted into any other boarding school affiliated with a ski program for the 2023-2024 school year.

### III.   CLAIMS AND CAUSES OF ACTION

#### A.   FIRST CLAIM FOR RELIEF
(*VIOLATION OF THE AMERICANS WITH DISABILITIES ACT*)

52. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

53. Plaintiff's conditions alleged herein constitute disabilities protected under the Americans with Disabilities Act.

54. As explained above, Plaintiff was and is qualified to attend SMS and SMS's boarding program.

55. SMS had knowledge of Plaintiff's disabilities.

56. SMS had knowledge of Plaintiff's need for reasonable accommodations.

57. Plaintiff was excluded from participation in or denied the benefits of SMS's services, programs, or activities and SMS's boarding program.

58. That exclusion, denial of benefits, and discrimination was by reason of Plaintiff's disability.  SMS's decision to deny Plaintiff admission for the 2023-2024 school year and to deny Plaintiff access to SMS's boarding program for the 2023-2024 school year was because of Plaintiff's disabilities and because of Plaintiff's need for reasonable accommodations.

59. SMS also failed to provide Plaintiff reasonable accommodations for the 2022-2023 school year.  Furthermore, by denying Plaintiff access to SMS and SMS's boarding program, SMS has failed to provide Plaintiff reasonable accommodations for the 2023-2024 school year.

60. Plaintiff's reasonable accommodations do not impose an undue hardship.  Plaintiff's reasonable accommodations do not require SMS to make any fundamental changes to the nature of its programs.

61. With reasonable accommodations, Plaintiff does not pose any direct threat to herself or to any others at SMS.

62. SMS's violations of Plaintiff's rights under the Americans with Disabilities Act have denied her equal access to its programs and has caused Plaintiff to suffer irreparable harm.

## IV.     REQUEST FOR RELIEF

Plaintiff requests that the court enter judgment in her favor and against Defendant SMS as follows:

63. Granting Plaintiff injunctive relief pursuant to 42 U.S.C. § 12188(a)(2) by issuing an order:

    a. Requiring Defendant to accept Plaintiff into its programs, including the boarding program for the 2023-2024 school year as contemplated by the Bullards' payments of a $5,000 deposit and $41,870 towards tuition;

    b. Requiring Defendant to reasonably accommodate Plaintiff's disabilities by: ensuring proper access to and administration of Plaintiff's medications, and ensuring proper access to Plaintiff's treatment providers, including the ability to attend any appointments, including virtual appointments; and

    c. Enjoining Defendant from any further violations of the ADA.

64. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

65. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

<u>*s/ Michael Nolt*</u>
Michael Nolt, Esq. #50668
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 588-9713
E-mail: michael@coloradolawteam.com
Attorney for Plaintiff